**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CONCERNED CITIZENS FOR NEIGHBORHOOD**
**SCHOOLS,**

**Plaintiff,**

**v.**

**5:05-CV-1070**
**(FJS/DEP)**

**JUDITH PASTEL, as Superintendent of the Ithaca**
**City School District; the BOARD OF EDUCATION**
**OF THE ITHACA CITY SCHOOL DISTRICT; and**
**the ITHACA CITY SCHOOL DISTRICT,**

**Defendants.**

_____

| | |
|---|---|
| **APPEARANCES** | **OF COUNSEL** |
| **TRUE & WALSH, LLP** | **PETER J. WALSH, ESQ.** |
| 950 Danby Road, Suite 310 | |
| Ithaca, New York 14850 | |
| Attorneys for Plaintiff | |
| **BOND, SCHOENECK & KING, PLLC** | **JONATHAN B. FELLOWS, ESQ.** |
| One Lincoln Center | |
| Syracuse, New York 13202-1355 | |
| Attorneys for Defendants | |

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Currently before the Court are Defendants' motion for judgment on the pleadings

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and Plaintiff's cross-motion to

amend its complaint.  The Court heard oral argument in support of, and in opposition to, these

motions on March 21, 2007, and reserved decision at that time.  The following constitutes the

Court's written decision regarding the pending motions.

## II. BACKGROUND

On August 26, 2005, Plaintiff filed its complaint in this action, together with an application requesting that the Court issue an Order that Defendants show cause why the Court should not issue a preliminary injunction. *See* Dkt. Nos. 1-2.  In its complaint, Plaintiff alleged that Defendants' school redistricting plan ("the Plan"), which Defendant Board of Education adopted on March 22, 2005, and which took effect on September 7, 2005, violated its members' rights to equal protection under the Fourteenth Amendment to the United States Constitution. *See* Complaint at ¶ 1.  Specifically, Plaintiff asserted that it "sue[d] on behalf of a group of elementary aged students who were selected by defendants, because of, among other things, their race, to be districted out of their academically successful, neighborhood school and placed into a more distant school that is failing academically." *See id.* at ¶ 2.

On September 15, 2005, the Court conducted a hearing to determine whether Plaintiff could demonstrate irreparable harm and whether Plaintiff was likely to succeed on the merits of its equal protection claim.  At that hearing, Judith Maxwell and Deborah O'Connor, two members of Defendant School Board who voted in favor of adopting the Plan, testified.  At the close of the hearing, the Court reserved decision and subsequently issued a written decision denying Plaintiff's motion for a preliminary injunction. *See generally* Order dated September 26, 2005.  Specifically, the Court found that "there is **absolutely no evidence** in the record to support Plaintiff's position that it is likely to succeed on the merits of its claim." *See id.* at 3 n.3. In fact, the Court concluded that

Plaintiff has come forward with absolutely no evidence to support its claim that Defendants impermissibly used race as a motivating factor in formulating their Plan or in selecting among alternative plans.  Although both Ms. Maxwell and Ms. O'Connor testified that they had received information about the Plan's effect on the racial composition of all of Defendant District's elementary schools at some point during their discussion of the various alternative plans, they categorically denied that they relied upon this information as a basis for their decision that Defendant District needed to develop a Plan, as a basis for selecting among alternative plans, or as a basis for their decision to transfer the students residing in the Horizons Cohort from Northeast Elementary School to BJM Elementary School.  Moreover, and perhaps most importantly for purposes of this motion, they testified that, from the information that they had received, they could not determine the racial composition of the students residing in the Horizons Cohort.

See id. at 3-4 (footnote omitted).

Furthermore, as an alternative basis for denying Plaintiff's motion, the Court noted that Plaintiff had come forward with absolutely no proof that the students who reside in the Horizons Cohort would suffer irreparable harm if the Court denied Plaintiff's motion.  See id. at 4.

On October 6, 2005, Defendants filed their answer to Plaintiff's complaint and raised as their second affirmative defense that, "[u]nder New York General Association Law § 12, plaintiff lacks the capacity to file a lawsuit on its own, absent the President or Treasurer of CCNS being named as a plaintiff."  See Dkt. No. 16 at ¶ 67.  On December 12, 2005, Magistrate Judge Peebles held an initial pretrial conference, at which Defendants' counsel stated that he would be seeking Rule 11 sanctions at some point in the case[1] and had already spoken to Plaintiff's counsel

_____

[1] Defendants' counsel asserts that he "advised the Court of [his] view that proceeding with the case in light of the decision on the preliminary injunction m[ight] constitute frivolous conduct, and stated that for this reason it was essential that an actual person be named as a party so that such person could be held responsible for the costs of the District in defending this

(continued...)

about this issue.  Magistrate Judge Peebles also set initial deadlines as follows:

| | |
|---|---|
| Joinder deadline | 2/28/06 |
| Amendment of pleadings deadline | 4/14/06 |
| Discovery deadline | 9/29/06 |
| Motion filing deadline | 11/30/06 |

*See* Unnumbered Docket Entry dated December 15, 2005; *see also* Dkt. No. 19 (Uniform Pretrial Scheduling Order).

On March 30, 2006, Magistrate Judge Peebles held a telephone conference with counsel, at which Plaintiff's counsel indicated that he would be serving document demands shortly.  After discussing the issue of whether an unincorporated association could serve as a plaintiff, Magistrate Judge Peebles directed Plaintiff to correct the pleading to list an individual on behalf of CCNS as Plaintiff.  Plaintiff's counsel stated that he would address this issue shortly.  *See* Unnumbered Docket Entry dated March 30, 2006.

On April 5, 2006, Plaintiff filed its request for production of documents.[2]  Magistrate Judge Peebles scheduled a telephone conference for August 15, 2006, but Plaintiff's counsel failed to participate and his secretary informed the Court that counsel was not in his office.  *See* Unnumbered Docket Entry dated August 18, 2006.  The Court tried to reschedule this telephone conference and left a message with Plaintiff's counsel's office on August 15, 2006, but Plaintiff's counsel never returned the Court's call.  *See id.*  Therefore, Magistrate Judge Peebles scheduled a telephone conference for August 31, 2006.  *See id.*

---

[1](...continued)
action."  *See* Declaration of Jonathan B. Fellows, dated February 6, 2007, at ¶ 8.

[2] Plaintiff's counsel should not have filed these discovery documents, and Magistrate Judge Peebles' Courtroom Deputy informed counsel that the Court would not consider these documents.  *See* Dkt. No. 22; Unnumbered Docket Entry dated April 5, 2006.

On June 26, 2006, Defendants' counsel sent Plaintiff's counsel a letter, asking whether Plaintiff was going to amend the complaint to address "the Court's direction that [Plaintiff's counsel] address the capacity of the plaintiff as named to proceed."  *See* Declaration of Jonathan Fellows, dated February 6, 2007, at ¶ 11 & Exhibit "E."  Hearing nothing from Plaintiff's counsel, Defendants' counsel sent him a second letter on August 9, 2006, in which he asked Plaintiff's counsel to advise him "as to whether [he was] willing to amend the complaint so that it is clear the president is the plaintiff on behalf of the association.  As we have discussed, it is possible the District will be seeking costs in this matter, and we need to have an actual plaintiff to hold responsible for this."  *See id.* at ¶ 12 & Exhibit "F."

After discussing the status of the case with counsel on August 31, 2006, Magistrate Judge Peebles scheduled another telephone conference for September 28, 2006.  *See* Unnumbered Docket Entry dated September 1, 2006.  At that status conference, Magistrate Judge Peebles extended the deadlines as follows:

| | |
|---|---|
| Joinder deadline | 10/31/06 |
| Amendment of pleadings deadline | 10/31/06 |
| Discovery deadline | 4/30/07 |
| Motion filing deadline | 6/29/07 |

*See* Unnumbered Docket Entry dated September 28, 2006.

On January 29, 2007, Magistrate Judge Peebles held another status conference.  At that time, Plaintiff requested leave to file a motion to amend its complaint, which the Court denied without prejudice.  Defendants' counsel stated that he intended to file a motion to dismiss.  Magistrate Judge Peebles noted that Plaintiff's counsel could file a cross-motion to amend its complaint in response to Defendants' motion to dismiss.  Defendants' counsel also noted that he

had produced more than 600 documents to Plaintiff's counsel in July 2006, to which Plaintiff had

not responded.  *See* Unnumbered Docket Entry dated January 29, 2007.

Finally, on February 2, 2007, Plaintiff's counsel filed a letter in which he accepted, on

behalf of his client, Magistrate Judge Peebles' offer to mediate a settlement in this action.  *See*

Dkt. No. 23.[3]  As a result of this letter, Magistrate Judge Peebles directed Defendants' counsel to

advise him if Defendants thought that a settlement conference would be beneficial.  *See*

Unnumbered Docket Entry dated February 5, 2007.  Defendants' counsel responded that

Defendants would be willing to attend a settlement conference but thought that such a conference

would be more productive if Plaintiff submitted a settlement proposal in advance of the meeting.

*See* Dkt. No. 25.

Against this procedural backdrop, Defendants now move for judgment on the pleadings,

and Plaintiff cross-moves for leave to amend its complaint.


### III. DISCUSSION

**A.      Defendants' motion for judgment on the pleadings**

The sole basis for Defendants' motion is their contention that Plaintiff does not have the

necessary capacity to maintain this action and that, therefore, the Court should dismiss the

complaint as a matter of law.

Rule 17(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that, with

the exception of the capacity of an individual or corporation to sue and be sued, "capacity to sue

---

[3] Plaintiff's counsel characterized this filing as a "Consent to Mediation," which is not entirely accurate.  He is actually accepting Magistrate Judge Peebles' offer to hold a settlement conference.

or be sued shall be determined by the law of the state in which the district court is held . . . ."

Fed. R. Civ. P. 17(b).  In New York, it is well-established that "an unincorporated association has

no life separate and apart from its members . . . ."  *Shapiro v. Sobel*, 85 A.D.2d 552, 553 (1st

Dep't 1981) (Bloom, J. dissenting) (citing *Ostom v. Greene*, 161 NY 353); *see also Int'l Union*

*United Auto. Aircraft & Agricultural Implement Workers, C.I.O., Local No. 1171 v. Aircooled*

*Motors, Inc.*, 284 A.D. 835, 835 (4th Dep't 1954) (citation omitted).  Therefore, "unincorporated

associations, which are voluntary congregate entities, are accorded the capacity to bring suit

through their presidents or treasurers by statute . . . ."  *Community Bd. 7 of Borough of*

*Manhattan v. Schaffer*, 84 N.Y.2d 148, 155 (1994) (citations omitted).

Section 12 of New York's General Associations Law explicitly provides that "[a]n action .

. . may be maintained, by the president or treasurer of an unincorporated association to recover

any property, or upon any cause of action, for or upon which all the associates may maintain such

an action . . ., by reason of the interest or ownership therein, either jointly or in common."  N.Y.

Gen. Ass'ns Law § 12 (McKinney 1994).  Moreover, the failure of the members of an

unincorporated association to bring an action in the name of either the president or the treasurer

is fatal to that cause of action.  *See Aircooled Motors, Inc.*, 284 A.D. at 835 (concluding that

"[t]he instant proceeding has not been instituted in accordance with common law or the statute,

and the court, therefore, does not here have jurisdiction of the respondent").

Although Defendants acknowledge that the Court could provide Plaintiff with an

opportunity to amend its complaint to add its president or treasurer, they contend that "no such

leave is appropriate [because] [t]he issue has been raised on numerous occasions with the Court,

and the time to amend pleadings has twice passed.  Plaintiff has deliberately failed to cure the

-7-

defect." *See* Defendants' Memorandum of Law at 3.

Plaintiff does not dispute that it lacks capacity to sue.  Instead, in response to Defendants' motion, it moves for leave to amend its complaint to substitute its president as the named Plaintiff, rather than the association itself.

**B.      Plaintiff's cross-motion for leave to amend its complaint**

In response to Defendants' motion, Plaintiff cross-moves to amend its complaint to "substitute as plaintiff a named individual [Jeffrey J. Rachlinski] as president of an unincorporated association." *See* Declaration of Peter J. Walsh, dated March 6, 2007, at ¶¶ 2, 4. Plaintiff also states that its proposed amended complaint "alleges facts tending to show that members of the unincorporated association have suffered and continue to suffer actual injury by the actions of the defendants complained of." *See id.* at ¶ 5.[4]

---

[4] The Court notes that, once again, Plaintiff has ignored the Court's Local Rules in submitting its proposed amended complaint.  Local Rule 7.1(a)(4) provides, in pertinent part, that "[t]he motion must set forth specifically the proposed amendments and identify the amendments in the proposed pleading, either through the submission of a red-lined version of the original pleading or other equivalent means."  L.R. 7.1(a)(4).  Plaintiff did not submit a red-lined version of its original complaint and the only statement about the proposed amendments is found in Plaintiff's counsel's declaration, in which he states that "[t]he proposed First Amended Complaint would substitute as plaintiff Jeffrey J. Rachlinski as president of the unincorporated association Concerned Citizens of Neighborhood Schools, and alleges facts tending to show that members of the unincorporated association have suffered and continue to suffer actually injury by the actions of the defendants complained of." *See* Declaration of Peter J. Walsh, dated, March 6, 2007, at ¶ 5.  Plaintiff's counsel does not direct the Court's attention to where, in the proposed amended complaint, these "facts" can be found nor does he explain how these "facts" tend to show that the association's members have suffered injury.

Despite these deficiencies, the Court reviewed the proposed amended pleading in an attempt to find the new facts; it appears they are contained in paragraphs 43-47 of the proposed amended complaint.  However, the Court notes that in only two of those paragraphs is there any

(continued...)

Plaintiff's counsel acknowledges that "[P]laintiff has not complied with the Court's deadline to serve an amended complaint." *See id.* at ¶ 6.  However, he states that "[i]t is not true that the failure of the plaintiff unincorporated association to serve an amended complaint was deliberate." *See id.* at ¶ 7.  Rather, Plaintiff's counsel admits that "[t]he failure to serve an amended complaint was the fault of plaintiff's counsel, who has accepted responsibility for the failure and apologized to the Court (Judge Peebles)." *See id.* at ¶ 8.  Plaintiff's counsel further explains that his "failure . . . to meet the deadlines set by the Court for amendment was due to inattention in the first instance, compounded by a failure to calendar the last deadline given by the Court's scheduling order." *See id.* at ¶ 9.

Moreover, Plaintiff's counsel states that "Mr. Rachlinski as president of the plaintiff has polled the members of the association, and informs me that the members wish to pursue this action and are prepared to schedule depositions immediately." *See id.* at ¶ 10.  Plaintiff's counsel also contends that, "despite [P]laintiff's inability to elicit affirmative testimony in support of a preliminary injunction at the hearing[,] . . . the [P]laintiff has stated a meritorious cause of action." *See id.* at ¶ 12.  Specifically, he claims that, "[s]ince the commencement of this action[,]

---

[4](...continued)

allegation that Defendants denied a child open enrollment.  *See* Proposed Amended Complaint at ¶ 45 (denied child open enrollment for 2005-2006 school year; child did not reapply for the 2006-2007 year) and ¶ 46 (denied child open enrollment for the 2005-2006 school year; offered child open enrollment for the 2006-2007 school year but child declined offer).  In the other three paragraphs, paragraphs 43, 44 and 47, the students have either never applied for open enrollment, *see id.* at ¶ 43 (currently attends kindergarten), or have been granted open enrollment, *see* ¶¶ 44, 47.  Thus, with regard to these latter paragraphs, it is mere speculation that Defendants would deny these students open enrollment if they applied.  Finally, the Court notes that there is no mention in any of these paragraphs of the race of the children involved.

the Beverly J. Martin Elementary School of the Ithaca City School District, to which the

Horizons Cohort Students have been assigned pursuant to the redistricting complained of, has

been designated by the New York Education Department as a 'school in need of improvement.'"

*See id.* at ¶ 13.  Finally, Plaintiff's counsel asserts that "[n]o prejudice to [D]efendants accrues by

reason of [P]laintiff's failure to serve an amended complaint and to vigorously pursue the action,

and no prejudice has been claimed by [D]efendants."  *See id.* at ¶ 14.

      In response, Defendants contend that Plaintiff sought to amend its complaint only after it

had caused undue delay in this action.  *See* Reply Declaration of Jonathan B. Fellows, dated

March 12, 2007, at ¶ 2.  Specifically, Defendants note that

> [t]his matter has been pending since August 26, 2005. . . . At the
> request of [P]laintiff [at the preliminary injunction hearing], board
> members and the superintendent of schools were in attendance . . . .
> Plaintiff examined board members, but declined to call the
> superintendent of schools.  In essence, [P]laintiff offered no
> affirmative evidence in support of the preliminary injunction.  The
> District, on the other hand, went to significant effort to submit a
> detailed opposing affidavit of Superintendent Pastel and legal
> memoranda on the motion.  After the hearing, the Court found
> there was "absolutely no evidence" to support the claims.

*See id.*

      Moreover, Defendants contend that, "[a]lthough this case has now been pending for over

a year and a half, [P]laintiff has still failed to make any initial disclosures.  Plaintiff, however,

submitted extensive documents [sic] demands to the District, which the District complied with

by producing thousands of pages of documents."  *See id.* at ¶ 3.  In addition, Defendants assert

that "Plaintiff has not only failed to make its initial disclosures identifying witnesses and

documents in support of its case, but failed to identify any experts in accordance with the Court's

scheduling orders.  The District, on the other hand, outlined the complete basis of its redistricting decision in Superintendent Pastel's affidavit in opposition to the preliminary injunction application." *See id.* at ¶ 5.

Finally, Defendants note that "the defect at issue on this motion, the failure to name a proper plaintiff, was raised in [D]efendants' initial Answer, and then at repeated conferences and in correspondence.  Plaintiff let not just one, but two scheduling orders pass without any effort to amend until [D]efendants went to the expense of a motion." *See id.* at ¶ 4.  Therefore, "in light of the passage of time with no effort by [P]laintiff to prosecute this case by making its initial disclosures, identifying expert witnesses, and correcting the defective pleading, it would appear there has been a deliberate determination not to proceed," *see id.* at ¶ 6, Defendants argue that the Court should deny Plaintiff's cross-motion to amend its complaint and, instead, should dismiss this action.

Rule 15(a) of the Federal Rules of Civil Procedure provides, in pertinent part, that a court shall grant leave to amend "when justice so requires," Fed. R. Civ. P. 15(a); nonetheless, it is within the court's discretion to grant or to deny that leave.  *See McCarthy v. Dun & Bradstreet Corp.*, No. 05-3828-cv, 2007 WL 967937, *13 (2d Cir. Mar. 29, 2007) (citations omitted). Moreover, "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.* (citation omitted).  Applying these standards, the Second Circuit noted in *McCarthy* that it had upheld the denial of such motions where the plaintiff made the motion two and one-half years after the commencement of the action and only three months before trial and where the plaintiff did not move to amend until discovery was completed and the defendant had moved for summary judgment.  *See id.* (citations

omitted).

Although admittedly, absent some evidence of prejudice, a court generally will not deny a motion for leave to amend based upon "undue delay," this is the unusual case where denial is appropriate.  Plaintiff has known since at least as early as **October 6, 2005**, when Defendants filed their answer, that Defendants intended to raise the issue that Plaintiff lacked capacity to sue.  *See* Dkt. No. 16 at ¶ 67.  Moreover, on **March 30, 2006**, Magistrate Judge Peebles provided Plaintiff with an opportunity to amend its pleading to correct this deficiency, and Plaintiff's counsel stated that he would do so shortly.  *See* Unnumbered Docket Entry dated March 30, 2006.  Twice more, by letters dated **June 26, 2006**, and **August 9, 2006**, after the deadline for amending pleadings had passed, Defendants' counsel asked Plaintiff's counsel whether he intended to amend the complaint to address this issue.  *See* Declaration of Jonathan Fellows, dated February 6, 2007, at ¶¶ 11-12 & Exhibits "E" & "F."  Plaintiff's counsel did not respond to either of these letters.  Finally, even after Magistrate Judge Peebles extended the deadline for the amendment of pleadings to October 31, 2006, Plaintiff did not move to amend its complaint.  It was not until **January 29, 2007 – almost sixteen months after Defendants filed their answer** – that Plaintiff requested leave to file a motion to amend its complaint, which Magistrate Judge Peebles denied without prejudice and with leave to renew in response to Defendants' motion to dismiss.  *See* Unnumbered Docket Entry dated January 29, 2007.  Finally, Plaintiff's counsel offers no excuse for this delay, other than his own inattention and failure to calendar the amendment deadline.  *See* Declaration of Peter J. Walsh, dated March 6, 2007, at ¶ 9.

The Court cannot ignore or excuse Plaintiff's counsel's total and blatant disregard of its Orders or his dilatory conduct.  Moreover, although Plaintiff's counsel acknowledges that it is his

-12-

conduct – and not that of his client – that has precipitated the current situation,  Plaintiff must suffer the consequences of its counsel's actions.  *Cf. Harris v. United States*, 367 F.3d 74, 81 (2d Cir. 2004) (noting that "'[t]here is . . . no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent'" (quotation omitted)).  Therefore, because both the Court and opposing counsel have given Plaintiff every opportunity to amend its complaint to rectify the deficiency therein and it has failed to take advantage of the same, the Court denies Plaintiff's cross-motion for leave to amend its complaint and, consequently, grants Defendants' motion for judgment on the pleadings because Plaintiff lacks the capacity to sue.

## IV. CONCLUSION

Accordingly, after carefully reviewing the entire file in this matter, the parties' submissions and oral arguments, and the applicable law, and for the reasons stated herein as well as at oral argument, the Court hereby

**ORDERS** that Plaintiff's cross-motion for leave to amend its complaint is **DENIED**; and the Court further

**ORDERS** that Defendants' motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is **GRANTED**; and the Court further

-13-

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: April 24, 2007
            Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge